UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

GERALD HOWARD SMITH,

    Plaintiff,

    v.      CAUSE NO. 3:19CV700-PPS/MGG

WARDEN,

    Defendant.

OPINION AND ORDER

Gerald Howard Smith, a prisoner without a lawyer, filed a motion for preliminary injunction seeking treatment for his heart condition and ongoing mini-strokes. I ordered the Warden to file a response with a sworn statement (and supporting medical documentation as necessary) explaining how Smith is receiving constitutionally adequate medical care, and he has now done so. Smith has not filed a reply.

"[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (emphasis in original). To obtain a preliminary injunction, the moving party must show that: (1) he will suffer irreparable harm before the final resolution of his claims; (2) available remedies at law are inadequate; and (3) he has a likelihood of success on the merits. *See BBL, Inc. v. City of Angola*, 809 F.3d 317, 323–24 (7th Cir. 2015). The court then "weighs the competing harms to the parties if an injunction is granted or denied and also considers the public interest." *Korte v. Sebelius*, 735 F.3d 654, 665 (7th Cir. 2013). An injunction ordering the

defendant to take an affirmative act rather than merely refrain from specific conduct is "cautiously viewed and sparingly issued." *Graham v. Med. Mut. of Ohio*, 130 F.3d 293, 295 (7th Cir. 1997) (quotation marks and citation omitted).

It is a truism that every inmate is entitled to receive constitutionally adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976). But before an inmate can obtain injunctive relief, he must make a clear showing that the medical care he is receiving violates the Eighth Amendment prohibition on cruel and unusual punishment. *See Westefer v. Neal*, 682 F.3d 679, 683 (7th Cir. 2012); *Mazurek*, 520 U.S. at 972.

Smith, who is currently housed at the Westville Correctional Facility, alleges he has been denied medical care and medication for his heart condition and ongoing mini-strokes since November of 2018. According to Smith, "[p]hysicians at the Westville Correctional Facility like Dr. Jackson refuse to see, treat, or even follow up on the Plaintiff's heath care needs." ECF 1 at 2. He claims that prison officials at Westville are providing him with "zero" care. *Id*. If true, I would undoubtedly be inclined to grant Smith's motion for preliminary injunctive relief.

But according to the Warden's affidavit and the medical records submitted with it (which Smith does not dispute), Smith has been seen by Dr. Jackson for chronic care visits five times and by various nurses on at least ten occasions since November of 2018. *See* ECF 10-1; ECF 10-2. For example, on intake he was examined by a nurse who noted that Smith had a history of heart disease including second-degree blockage, high blood pressure, and diabetes. ECF 10-2 at 4. He was prescribed aspirin, lisinopril (an ACE

2

inhibitor), atorvastatin (a cholesterol medication) and glipizide (an anti-diabetic medication). *Id*. at 14. Later, on November 27, 2018, Dr. Jackson acknowledged Smith's history of cardiac issues (syncope with bifasicular block), but upon examination noted normal cardiovascular findings with "Regular rhythm" and "No murmurs, gallops, or rubs." *Id*. at 21, 23. All medications were continued with a plan to change Smith from glipizide to metformin in the future. *Id*. at 21. Similarly, on December 28, 2018, Dr. Jackson noted that Smith had no chest pain, edema, or jugular vein distention, normal PMI findings, and a regular heart rate and rhythm with no extra sounds or murmurs. *Id*. at 31. The medications were continued with metformin replacing the glipizide. *Id*. at 32.

In January of 2019, Smith reported problems walking during nurse visits, and he was given a cane to assist with stability. *Id*. at 33–37. According to comments in his chart, Smith reported that he "does ambulate very slowly, but is steady, has no issues other than he is 71 years old and doesn't 'move as fast as I used to' [and] reports no problems getting to chow or meds." *Id*. at 36. On January 28, 2019, Dr. Jackson again examined Smith and noted that his cardiovascular exam was normal and that his blood pressure and diabetes were well-controlled. *Id*. at 39–41.

Smith's medical care continued into late winter and spring of this year. For example, on February 6th, Smith's chart was updated to show his current medications including aspirin, atorvastatin, lisinopril, and metformin, and on April 2nd, he visited the nurse who renewed those medications. *Id*. at 43, 46. On April 24th, Dr. Jackson noted that Smith had a gait disturbance along with decreased pulses in the dorsalis pedis and posterior tibial but described his cardiovascular exam as normal. *Id*. at 48–49. A May 7th

3

chart update indicated that he remained on the same medications, and several tests were ordered including a lipid (cardiac) panel. *Id.* at 51–52. Smith submitted a request for health care form on June 12th stating that he had not received his medication for three weeks. ECF 10-3 at 1. A response from staff indicated that "all meds were picked up on 6/16/19." *Id.* Smith was seen by a nurse on July 2nd, and no additional issues or concerns were noted. ECF 10-2 at 56–57.

Smith had an annual screening on July 23, 2019, and his cardiovascular and vascular exams were normal. *Id.* at 62–63. A comment from that screening indicates that Smith was worried about his "foot repair per the VA," but no mention was made of any concerns regarding his heart condition or mini-strokes. *Id.* at 65. On August 1st, Smith was seen by Dr. Jackson for a chronic care visit. *Id.* at 72. Dr. Jackson noted that Smith "states he has cad-but denies any angina and states post release he will go to VA for further cardiac w/up." *Id.* The results of Smith's cardiovascular and vascular exam were normal. *Id.* at 74. The medications listed above were continued, and Dr. Jackson ordered a comprehensive metabolic panel. *Id.* at 75. On August 19th, Smith was brought to urgent care and assessed by a nurse after a fall; according to Smith, his shoes got stuck to the floor and he lost his balance. *Id.* at 78. The nurse noted that there was no bruising, red areas, breakdown, or complaints of significant discomfort. *Id.* at 80. Smith, who stated that he was "slightly sore to my right hip" but could "walk okay, just taking it slow," was advised to return if his symptoms did not subside or became more severe. *Id.* There is no indication that Smith returned to medical or filed a request for health care prior to filing this lawsuit approximately nine days later.

Smith is now asking to be taken to the Veteran's Administration for medical care, but "the Constitution is not a medical code that mandates specific medical treatment." *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996). Inmates are "not entitled to demand specific care [nor] entitled to the best care possible." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). While Smith claims that health care professionals at Westville are refusing to see him and have provided him with zero care, the undisputed medical records described above show otherwise. Nurses and physicians have acknowledged his heart condition among other chronic ailments, prescribed medication, and performed cardiovascular examinations which resulted in normal findings on numerous occasions. Smith has been seen by Dr. Jackson regularly throughout his time at Westville. Although Smith alleges that his ongoing mini-strokes have been ignored, there is no evidence that he experienced any stokes during the time period in question. None of the six health care requests forms Smith submitted since his arrival at Westville mention heart issues or strokes, and all were responded to in kind. *See* ECF 10-3.

In sum, Smith has failed to show a likelihood of success on the merits of his claim for injunctive relief because the record demonstrates that he is receiving medical treatment that reflects professional judgment, practice, and standards. *See Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008) ("[M]edical professionals are not required to provide proper medical treatment to prisoners, but rather they must provide medical treatment that reflects professional judgment, practice, or standards.") (internal quotation marks and citation omitted). Additionally, because the record indicates that Smith has been receiving ongoing medical treatment at regular intervals, I find it

5

unlikely that this treatment will be discontinued or that he would suffer irreparable harm absent immediate court intervention. Put simply, Smith has not shown that a preliminary injunction is warranted at this time. *See BBL, Inc.*, 809 F.3d at 323–24.

ACCORDINGLY:

Plaintiff Gerald Howard Smith's motion for preliminary injunction (ECF 1) is DENIED.

SO ORDERED on October 30, 2019.

/s/ Philip P. Simon  
JUDGE  
UNITED STATES DISTRICT COURT